UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALFREDO VILLASENOR,<br><br>        Plaintiff,<br><br>  v.<br><br>COMMUNITY CHILD CARE COUNCIL OF SANTA CLARA COUNTY, INC., et al.,<br><br>        Defendants. | Case No. 18-cv-06628-BLF<br><br>**ORDER GRANTING PLAINTIFF ALFREDO VILLASENOR'S MOTION FOR JUDGMENT ON HIS CLAIM FOR ERISA BENEFITS**<br><br>[Re: ECF 58] |

Plaintiff Alfredo Villasenor brings this action to recover his retirement benefits under two plans sponsored by his former employer, Defendant Community Child Care Council of Santa Clara County, Inc. (the "4Cs."). Before the Court is Plaintiff's Motion for Judgment on his claim for benefits under Employee Retirement Income Security Act of 1974 ("ERISA") pursuant to the Federal Rule of Civil Procedure 56.[1]  Motion, ECF 58.  The Court heard oral arguments on June 4, 2020 (the "Hearing").  For the reasons stated below, the Court GRANTS Plaintiff's Motion.

I. **INTRODUCTION**

Community Child Care Council of Santa Clara County, Inc. is a 501(c)(3) non-profit, community-based agency providing childcare services. Declaration of Alfredo Villasenor ("Villasenor Decl.") ¶¶ 3-4, ECF 59.  Plaintiff was involved in the formation of the 4Cs in 1972 and was one of its original employees. *Id.* ¶ 2.  In 1975, Plaintiff became the Executive Director of the 4Cs and remained in that position until August 4, 2017, when he retired. *Id.* ¶¶ 5-6.

The 4Cs established two retirement plans for the benefit of its employees: (1) Community

---

[1] The present Motion relates to Plaintiff's ERISA claim only and not his state law claims for breach of contract and violation of the California Labor Code.

Child Care Council of Santa Clara County, Inc. Employee Profit Sharing Plan (the "Qualified Plan") and (2) Community Child Care Council of Santa Clara County Non-Qualified Pension Plan (the "Non-Qualified Plan") (collectively, the "Retirement Plans."). *See* Villasenor Decl. ¶ 8, 9; Exh. A to Villasenor Decl., ECF 59-1; Declaration of Kevin Logan ("Logan Decl.") ¶¶ 2, 3; Exh. 1 to Logan Decl., ECF 60-1. Plaintiff was a participant in both Retirement Plans. Logan Decl. ¶ 2.

On August 4, 2017, Plaintiff retired from the 4Cs. Villasenor Decl. ¶ 15. On August 7, 2017 Plaintiff emailed Kevin Logan of the the Logan Group – the insurance agent for the Retirement Plans – that his retirement was "final" and that he wished to "immediately process and receive [his] qualified and non-qualified pension distribution." Exh. 4 to Logan Decl., ECF 60-4. After he retired, Plaintiff continued to work for the 4Cs under a consulting contract until October 31, 2017. *Id.* ¶¶ 15-16. On October 24, 2017 at 2:30 P.M., Plaintiff sent Kevin Logan another email – copying Ben Menor (the 4Cs' Board President) stating that he had "finally decided to apply and process" his benefits under the Retirement Plans. Exh. 4 to Logan Decl.; *see also* Exh. B. to Villasenor Decl., ECF 59-2. Later that day, Plaintiff emailed Mr. Menor – this time copying Mr. Logan – asking Mr. Menor to contact Mr. Logan regarding the distribution of Plaintiff's "4C[s] retirement pensions" so Mr. Logan can process Plaintiff's benefits. Exh. 4 to Logan Decl.

Plaintiff did not receive a written response to his requests for retirements benefits. Villasenor Decl. ¶ 18. On October 24, 2017, Mr. Logan called Plaintiff and told him that the 4Cs' attorney, Willie Brown, had instructed him not to process Plaintiff's claims. *Id.*; *see also* Logan Decl. ¶ 7 ("At some point, at or near, October, 2017, I believe I was told not to further process Mr. Villasenor's claims for retirement benefits. I informed Mr. Villasenor of this instruction[.]"). On October 25, 2017 and October 26, 2017, Plaintiff emailed Mr. Brown – copying Mr. Menor – requesting "all parties to please process my retirement benefit as directed by the 4C[s] retirement plan document." Exh. 4 to Logan Decl. Plaintiff did not receive a response from Mr. Brown. Villasenor Decl. ¶ 19.

On November 28, 2017, Plaintiff sent a letter (via email) to Mr. Menor – copying all members of the 4Cs Board of Directors, Mr. Willie Brown, and the Logan Group – to follow up on his October 25, 2017 email and requested again that his benefits under the Retirement Plans be processed. Exh. C to Villasenor Decl., ECF 59-3; Villasenor Decl. ¶ 21. Plaintiff did not receive a

2

1    response to this letter. Villasenor Decl. ¶ 21. On October 31, 2018, Plaintiff filed this lawsuit
2    against the 4Cs and the Retirement Plans, seeking payment of his retirement benefits. ECF 1.
3    Plaintiff asserts three causes of action: (1) Recovery of Plan Benefits [29 U.S.C. § 1132(a)(1)(B)]
4    against all Defendants; (2) Breach of Contract against the 4Cs; and (3) Wage Statute Violations
5    against the 4Cs. *Id.* ¶¶ 32-52.

6    On April 9, 2019, Plaintiff received a letter from the 4Cs, informing him that the Qualified
7    Plan was transferred from Insurance Company of the Southwest ("LSW") to Mutual of Omaha.
8    Villasenor Decl. ¶ 23; Exh. D to Villasenor Decl., ECF 59-4. Plaintiff called and emailed Mutual
9    of Omaha to request access to his retirement account. Villasenor Decl. ¶ 24. The Mutual of Omaha
10   representative, Paul Romo, at first confirmed that Plaintiff was a participant in the Qualified Plan
11   and should be able to get access to his account. *Id.* But later, Mr. Romo told Plaintiff that the 4Cs
12   attorneys informed Mr. Romo that Plaintiff's account remains "frozen due to the audits and pending
13   lawsuits." *Id.*; Exh. E to Villasenor Decl., ECF 59-5. Mr. Romo also told Plaintiff that he was
14   obligated by the Internal Revenue Service ("IRS") regulations to withdraw the Required Minimum
15   Distribution ("RMD") each year and that he will be penalized 50% of his RMD for failing to do so.
16   Villasenor Decl. ¶ 25. Plaintiff has been unable to withdraw the RMD. *Id.* ¶ 26.

17   On January 30, 2020, Plaintiff filed the present Motion for Judgment. ECF 58. The Court
18   set a hearing on Plaintiff's Motion on March 19, 2020. On February 12, 2020, the Court granted
19   the parties' stipulation to extend the deadline for Defendant's opposition brief to April 2, 2020 (with
20   the reply due on April 9, 2020) and reset the hearing date to May 21, 2020. ECF 62. When the
21   April 2, 2020 deadline passed and Defendants failed to oppose Plaintiff's Motion, Plaintiff filed a
22   reply on April 9, 2020 requesting that the Court grant his unopposed motion without oral argument.
23   ECF 63. Nearly two weeks later, on April 22, 2020, Defendants filed an *ex parte* application
24   requesting an extension to file their opposition brief. ECF 64. In the interest of deciding Plaintiff's
25   motion on its merits, the Court granted Defendants' application and they filed an opposition on April
26   24, 2020. Opp'n, ECF 68. Plaintiff filed a timely reply. Reply, ECF 72.

27   On April 17, 2020, one week before Defendants filed their opposition, 4Cs authorized
28   Mutual of Omaha to distribute to Plaintiff his benefits under the Qualified Plan. ECF 71-3. 4Cs did

3

1    not authorize any distributions from the Non-Qualified Plan. *Id.*

## II. LEGAL STANDARD

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). "The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

"Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.*, 627 F.3d at 387. "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (internal quotation marks and citation omitted).

## III. DISCUSSION

Plaintiff's claim arises from Defendants' failure to pay retirement benefits under two ERISA-governed Retirement Plans. ERISA is a "comprehensive legislative scheme" enacted to "protect the interests of participants in employee benefit plans and their beneficiaries by setting out substantive regulatory requirements for employee benefit plans and to provide for appropriate remedies, sanctions, and ready access to the Federal courts." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (citations and alterations omitted); *see also* 29 U.S.C. § 1001(b). ERISA authorizes plan participants and beneficiaries to bring a civil action to recover benefits due under the terms of a plan; to enforce rights under the terms of the plan; or to clarify rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B).

Plaintiff's position is straightforward: he asserts that he was a participant in the Retirement Plans, applied for his benefits, and Defendants withheld his benefits without a written explanation. *See* Motion at 1. Defendants do not dispute Plaintiff's eligibility, but argue that his claim for benefits

4

should nevertheless be denied because (1) Plaintiff "never properly presented a claim for benefits under either Plan", (2) Plaintiff did not exhaust his administrative remedies before filing this action, (3) the balance in Plaintiff's Non-Qualified account is zero, and (4) Defendants withheld Plaintiff's retirement distributions under the Non-Qualified Plan in their discretion on the basis of Plaintiff's "unclean hands." *See* Opp'n.

### A. Plaintiff's Request for His Retirement Benefits

#### 1. The Claim Process

In his declaration, Plaintiff sets out the manner in which the 4Cs processed claims for retirement benefits: (1) the retiring employee notified the Logan Group of his or her retirement and asked for benefits to be paid; (2) the Logan Group then advised the Executive Director of the 4Cs that a request for benefits had been made under the Retirement Plans; (3) the 4Cs Executive Director verified whether the employee was eligible for benefits under the Retirement Plans; (4) if eligible, the Logan Group calculated the benefit amounts; (5) the 4Cs Executive Director then sent a letter to LSW (the insurance company) through the Logan Group authorizing the payment of the benefits; and (6) the claim would then be processed by the insurance company through the Logan Group. *See* Villasenor Decl. ¶ 14.

Defendants do not dispute the claim process Plaintiff describes. Joe Manarang, the current Executive Director for the 4Cs – who was also Interim Executive Director from August 16, 2017 to August 16, 2018 – declares that he "received and reviewed the forms for rollovers, distributions, and transfers associated with both Plans" from the Logan Group. Manarang Decl. ¶ 5. Manarang further declares that once the forms were received from the Logan Group, 4Cs would review the forms, verify the employee's eligibility, and if appropriate, authorize the insurance company (through Logan Group) to process the claim. *Id.* ¶ 6. Hence, Defendants' version of the claim process is consistent with Plaintiff's – with the exception that Defendants do not provide any evidence as to how the retiring employees were to initiate the claim process. Instead, Manarang only describes the claim process *after* the claim was submitted. Importantly, Defendants do not dispute that the employees were expected to start the claim process by contacting the Logan Group.

In their opposition to this Motion, Defendants argue that the Retirement Plans required

Plaintiff to submit his claim to the Plan Administrator. Opp'n at 4 (citing Exh. A to Manarang Decl. at 132, ECF 71-1). But the cited evidence, namely the "Claim Procedure" section of the Qualified Plan, does not establish how an employee was required to initiate his or her claim process. Instead, the Qualified Plan document simply states that "[t]he Plan Administrator shall establish a procedure for benefit claims consistent with the requirements of ERISA Reg. §2560.503-1" and goes on to establish the review and decision process. *See* Exh. A to Manarang Decl., § 11.07 (PLAN000132). This is not inconsistent with Plaintiff's evidence regarding the claim process – that the 4Cs' claim process started with the retiring employee's request to the Logan Group – and therefore, does not create a factual dispute as to the claim process under the Qualified Plan.[2]

Accordingly, The Court finds that the parties have no material factual dispute as to the manner in which claims for retirement benefits were processed at the 4Cs in 2017. The parties affirmatively agree that the 4Cs received claim forms from the Logan Group, verified eligibility, and if appropriate, authorized the insurance company through Logan Group to process payment. While Manarang does not state how the retiring employees were to initiate the claim process, he does not dispute Plaintiff's evidence that the claim began with a request to the Logan Group. To the contrary, Manarang states that "4Cs received the [claim] forms from The Logan Group." *See* Manarang Decl. ¶ 5. The only reasonable inference from Manarang's declaration is that that retiring employees – as stated by Plaintiff – began their claim process by contacting the Logan Group, which was then forwarded to the 4Cs.

In short, Plaintiff has provided evidence on the manner 4Cs processed employees' claims for retirement benefits and Defendants have failed to demonstrate the existence of a genuine issue of material fact about that process.

**2. Plaintiff's Application for His Retirement Benefits**

Plaintiff asserts that he applied for his retirement benefits once in August 2017 (when he retired) and again in October 2017 (when his consultant position ended). Villasenor Decl. ¶¶ 15-

---

[2] Although Defendants fail to cite to the Non-Qualified Plan documents, the Court notes that the Non-Qualified Plan identifies the Compensation Committee of the 4Cs' Board of Directors as the Plan Administrator. Exh. 1 to Logan Decl. §§ 2.3, 5.

16; Exh. 4 to Logan Decl. On August 7, 2017, Plaintiff emailed Kevin Logan (of the Logan Group) informing him that his retirement was "final" and that he "wish[ed] to immediately process and receive [his] qualified and non- qualified pension distribution." Exh. 4 to Logan Decl. And on October 24, 2017, Plaintiff again emailed Kevin Logan – this time copying Ben Menor – to "apply and process [his] qualified and nonqualified retirement benefit." *Id.* Once it appeared that his retirement benefits were not forthcoming, Plaintiff sent a letter to Mr. Menor – copying all members of the 4Cs Board of Directors, Mr. Willie Brown, and the Logan Group – and again requested his benefits under the Retirement Plans to be processed. Exh. C to Villasenor Decl.

Defendants do not dispute that Plaintiff sent the mentioned emails and letter to claim his retirement benefits – or that Mr. Logan and Mr. Menor (and others at the 4Cs) received these requests. *See generally*, Opp'n. Instead, Defendants assert that Plaintiff "did not follow the claims procedure to obtain distributions" because "neither Menor nor Lamparas was ever a Plan Administrator for 4Cs." Opp'n at 3. Tellingly, Defendants do not say who the Plan Administrator was at the time of Plaintiff's retirement or mention anything about Plaintiff's requests through the Logan Group. Instead, Defendants cryptically assert that "Manarang never received any requests or forms from Villasenor regarding retirement benefits" – without saying whether Manarang was the Plan Administrator. Opp'n at 3 (citing Manarang Decl. ¶ 8). This sort of hand-waiving response to Plaintiff's evidence does not create a factual dispute to defeat a motion for summary judgment.

Even if the Court were to accept that Manarang was the Plan Administrator and did not receive Plaintiff's forms regarding his benefits, Defendants' position that Plaintiff did not "properly present[] a claim for benefits" rings hollow because (1) Manarang admittedly was not the Interim Executive Director for 4Cs on August 7, 2017 when Plaintiff made his first request for benefits to Logan Group and (2) Defendants do not dispute that Plaintiff submitted his request to the Logan Group – from whom Manarang declares he was getting the retirement forms. *See* Manarang Decl. ¶¶ 2, 6. In other words, it is not enough for Defendants to claim Manarang did not receive Plaintiff's forms. To defeat summary judgment, Defendants were required to present evidence showing a factual dispute as to the claim process or explain why Plaintiff's request to Logan Group was not sufficient – Defendants failed to do so.

7

Further, the Court notes that the Plan documents support Plaintiff's position that he properly applied for his retirement benefits. According to the Qualified Plan document, "[u]nless otherwise designated by the Employer, the Plan Administrator is the Employer." Exh. A to Manarang Decl. § 1.96 (PLAN000019). And the Non-Qualified Plan identifies the Compensation Committee of the 4Cs' Board of Directors as the Plan Administrator. Exh. 1 to Logan Decl. §§ 2.3, 5. In addition, the only claim requirement for employees under the Non-Qualified Plan is that the claim for benefits be filed within six months of the employee's retirement. Exh. 1 to Logan Decl. § 4. Plaintiff made multiple requests for his benefits within six months of his retirement on August 4, 2017: (1) on August 7, 2017 by emailing the Logan Group; (2) on October 24, 2017 by emailing the Logan Group and copying Mr. Menor (and follow up emails to Mr. Menor); and (3) on November 28, 2017 by a letter (via email) to Mr. Menor and copying all members of the 4Cs Board of Directors, the Logan Group, and 4Cs legal counsel. Villasenor Decl. ¶¶ 15, 16, 21; Exh, 4 to Logan Decl. Defendants do not dispute that Plaintiff sent these emails or that Mr. Menor, Mr. Logan, and others in 4Cs received them. In sum, nothing in the text of the Plan documents creates a dispute as to Plaintiff's application for his retirement benefits.

The parties do, however, present a dispute as to whether on August 4, 2017, Mr. Menor sent a letter to Kevin Logan authorizing payment on Plaintiff's claims. *See* Exh. 3 to Logan Decl., ECF 60-3. Mr. Menor declares that while his electronic signature appears on the letter submitted by Plaintiff, he "did not authorize anyone to use [his] electronic signature in connection with the letter" and he does not "recall seeing Exhibit 3 prior to this litigation." Menor Decl. ¶ 4, ECF 70. In short, Defendants dispute the authenticity of the letter Plaintiff submitted. While this certainly is a factual dispute, it is not a material one. For the purposes of Plaintiff's Motion, it is irrelevant whether Mr. Menor ever authorized payment on Plaintiff's retirement benefits. The issue for the Court to decide is whether Plaintiff is entitled to benefits under the Retirement Plans.

Accordingly, the Court finds that Plaintiff has provided evidence that he applied for his retirement benefits in August, October, and November 2017. Even if the Court disregards the purported August application based on the disputed authenticity of the Menor signature, there is no dispute as to the October and November 2017 applications. And Defendants have failed to present

any evidence to the contrary to create a factual dispute.

### 3. Plaintiff's Eligibility

#### a. The Qualified Plan

To be eligible for the Qualified Plan employees must (1) be at least 18 years of age and (2) have completed twelve months of employment in which the employee worked over 1000 hours. Exh. A to Villasenor Decl. § 2 (PLAN000027). The employee contributions under the Qualified Plan vest after 6 years of service in which the employee worked over 1000 hours. *Id.* § 7.02 (PLAN000088). Employees who retire at age 65 may withdraw the contributions made to the Qualified Plan. *Id.* § 8.01. Once an employee separates from service, the employee will be entitled to receive a distribution from his or her account within 60 days following the date of separation. *Id.*

Plaintiff declares that he met the eligibility requirement for the Qualified Plan because Plaintiff is over 18, he worked more than 1000 hours for the 4Cs, and he worked for more than six years thus his benefits were 100% vested. *Id.* ¶¶ 6, 11, 16, 17. Defendants do not dispute these facts. Defendants also appear to concede Plaintiff's eligibility for the Qualified Plan because on April 17, 2020, they authorized distributions to him. *See* ECF 71-3. Accordingly, the Court finds that there is no material dispute as to Plaintiff's eligibility for the Qualified Plan.

#### b. The Non-Qualified Plan

The 4Cs Non-Qualified Plan "was designed to supplement the qualified pension retirement plan for all employees who retire, are age 60 or over, [have] 5 years or more of service, and are receiving a 20-year monthly pension benefit from their 4C's qualified plan." Exh. 1 to Logan Decl. To be eligible for the Non-Qualified Plan, a former employee must: (1) have retired from the 4Cs within 6 months prior to presenting a claim for benefits; (2) have been employed by the 4Cs for five years or more; (3) be 60 years or older; and (4) have selected a twenty-year payment schedule for payment of retirement benefits from the Qualified Plan. *Id.* § 2.6. In place of paying a monthly benefit for 20 years, the Non-Qualified Plan authorized the purchase of an annuity. *Id.* § 3.3.

Plaintiff declares that he met the eligibility requirement for both Retirement Plans. As for the Non-Qualified Plan, when Plaintiff retired from the 4Cs on August 4, 2017, he was over age 60 and he had worked at the 4Cs for more than five years. Villasenor Decl. ¶ 17. Plaintiff selected a

twenty-year payout for his retirement benefits from the Qualified and Non-Qualified Plans. *Id.* ¶¶ 16-17. These facts are not disputed. And as the Court found earlier in this order, Plaintiff has presented undisputed evidence that he requested his retirement benefits under both Qualified Plan and Non-Qualified Plan within six months after he retired – at least in October and November 2017. *See id.* ¶¶ 15-16, 21. Accordingly, the Court finds that there is no material dispute as to Plaintiff's eligibility for the Non-Qualified Plan.

### B. Defendants' Response to Plaintiff's Request for Retirement Benefits

The parties do not dispute that both Retirement Plans are subject to ERISA's enforcement provisions. *See* Motion at 9; *see generally,* Opp'n. ERISA section 2560.503-1 sets forth the minimum requirements for ERISA plan procedures pertaining to claims for benefits by participants and beneficiaries. If a claim for ERISA benefits is wholly or partially denied, the plan administrator must notify the claimant, in writing, within 90 days of receiving the claim and include the reasons for the adverse determination. 29 C.F.R. § 2560.503-1(f)-(g).

There is no dispute that Plaintiff did not receive a written response to his request for retirement benefits. Villasenor Decl. ¶ 18. Plaintiff asserts that Kevin Logan told him on October 24, 2017 that the 4Cs' attorney, Willie Brown, had instructed Mr. Logan not to process Plaintiff's claims. *Id.* Mr. Logan declares: "[a]t some point, at or near, October, 2017, I believe I was told not to further process Mr. Villasenor's claims for retirement benefits. I informed Mr. Villasenor of this instruction and have not spoken with Mr. Villasenor since October 2017 about this." Logan Decl. ¶ 7. Defendants do not dispute these facts. In fact, Mr. Menor confirms that "Legal counsel advised the 4Cs Board not to issue any Qualified or Non-Qualified Plan benefits to Alfredo Villasenor …." Menor Decl. ¶ 6. Accordingly, the Court finds that Defendants failed to follow the claim procedures set up by ERISA because they failed to notify Plaintiff in writing that his claims for retirement benefits were denied (or withheld) and provide the reasons for such adverse decision in writing within 90 days.

Next the Court addresses the consequences of Defendants' failure to follow ERISA's claim procedures.

### 1. Exhaustion of Administrative Remedies

"As a general rule, an ERISA claimant must exhaust available administrative remedies before bringing a claim in federal court." *Barboza v. Cal. Ass'n of Prof'l Firefighters*, 651 F.3d 1073, 1076 (9th Cir.2011). But, if a plan fails to follow the claim procedures set out in ERISA section 2560.503-1, "a claimant shall be deemed to have exhausted the administrative remedies" and may bring suit to collect his or her benefits. *Id.* § 2560.503-1(l)(1).

Defendants argue that Plaintiff's claim for benefits should be denied because "he failed to exhaust his administrative remedies." Opp'n at 4. This would have been a valid argument *if* Defendants had followed ERISA's minimum claim procedures and notified Plaintiff in writing that his claims were denied (or withheld) and the reasons for that decision within 90 days of Plaintiff's claim for benefits. But Defendants simply stopped communicating with Plaintiff about his claim and therefore Plaintiff's administrative remedies "must be deemed exhausted under 29 C.F.R. § 2560.503–1(l)." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1299 (9th Cir. 2014). The facts are straightforward and undisputed. Defendants did not send Plaintiff any written communication regarding his retirement benefits. Thus, Plaintiff's administrative remedies are deemed exhausted and he was not required to take any further action before filing this lawsuit.

Further, although he was not required to, Plaintiff followed the administrative procedures set out by the Non-Qualified Plan:

> A person who believes that he or she is being denied a benefit to which he or she is entitled under this Plan (hereinafter referred to as "Claimant") may file a written request for such benefit with the Committee, setting forth his or her claim.

Exh. 1 to Logan Decl. § 6.12. The "Committee" is defined as "the Compensation Committee of the Board." *Id.* § 2.3. On November 28, 2017, Plaintiff sent a letter via email to Mr. Menor (Chair of the 4Cs Board) and copied all Board members requesting his retirement benefits under the Retirement Plans. Villasenor Decl. ¶ 21, Exh. C to Villasenor Decl. Defendants do not dispute that Plaintiff sent this letter or that the 4Cs Board received it. There is also no dispute that Defendants never responded to Plaintiff's November 28, 2017 letter. Accordingly, the Court finds that Plaintiff has provided undisputed evidence that he exhausted his administrative remedies under the Non-

Qualified Plan.

In sum, Plaintiff's administrative remedies were exhausted.

### 2. Defendants' Reasons for Denying Plaintiff's Claim for Retirement Benefits

An ERISA plan administrator who denies a claim must explain the "specific reasons for such denial" and provide a "full and fair review" of the denial. 29 U.S.C. § 1133. "A plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged in federal court, unless the plan beneficiary has waived any objection." *Harlick v. Blue Shield of California*, 686 F.3d 699, 719 (9th Cir. 2012).

Defendants assert that the Non-Qualified Plan "gives discretionary authority to the administrator or fiduciary to determine eligibility for benefits and to construe terms of the Plan[.]" Opp'n at 5. In exercising that discretion, Defendants argue, they withheld retirement distribution because Plaintiff was "accused of engaging in prohibited transactions and breaching his fiduciary duty while acting as Executive Director of 4Cs" in a separate lawsuit. Opp'n at 5. And without citing to any evidence[3], Defendants conclude that "Villasenor's actions are vulnerable to an unclean hands defense." *Id.* at 6.

But Defendants' reasons for withholding Plaintiff's benefits are of no consequence at this stage. Because Defendants failed to raise ***any reasons*** for denying or delaying benefits during the administrative process, they are precluded from raising those reasons now. "[A] contrary rule would allow claimants, who are entitled to sue once a claim had been 'deemed denied,' to be 'sandbagged' by a rationale the plan administrator adduces only after the suit has commenced." *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1199 n. 2 (9th Cir. 2010) (citation omitted). And in any event, Defendants fail to articulate their grounds for "unclean hands" defense or cite to any evidence of Plaintiff's alleged wrongful actions. Accordingly, the Court declines – as it must –

---

[3] The Court notes that in a different section of their opposition brief, Defendants cite to certain emails that allegedly "warn[ed] [Plaintiff] about compliance issues related to the Nonqualified Plan." Opp'n to 2 (citing Exh. B to Manarang Decl., ECF 71-2). Because Defendants fail to articulate how and why these emails are evidence of "unclean hands," the Court declines to consider them.

12

to consider Defendants' reasons for declining Plaintiff's retirement benefits because those reasons were not raised before this lawsuit was filed.

### 3. Defendants' Authorization of Distribution of Benefits under the Qualified Plan

On April 17, 2020, 4Cs authorized Mutual of Omaha to distribute to Plaintiff his benefits under the Qualified Plan. *See* ECF 71-3. Defendants argue that because they authorized distribution of Plaintiff's benefits, his motion should be denied as moot as for his claims under the Qualified Plan. Opp'n at 1. Plaintiff replies that his claim for benefits under the Qualified Plan is not moot because "in addition to his benefits under the Qualified Plan, Mr. Villasenor also seeks, and is entitled to, additional relief as a result of the wrongful withholding of his vested benefits, including payment of his IRS penalties for failure to take required minimum distributions and his attorney's fees." Reply at 2.

The Court agrees with Plaintiff. Defendants delayed the authorization of Plaintiff's claim for benefits under the Qualified Plan for over two years – without providing him with any written explanation. More than 15 months after Plaintiff sued for benefits and shortly before filing their tardy opposition to Plaintiff's motion for summary judgment, Defendants finally authorized the processing of Plaintiff's benefits under the Qualified Plan. Defendants cannot ignore an ERISA plan participant's claim for years and escape the consequences of their actions (or inactions) by simply "mooting" Plaintiff's claim at this stage of litigation. Plaintiff's claim for benefits under the Qualified Plan is not moot because he seeks to recover additional relief, such as interest and IRS penalties.

### 4. Plaintiff's Account Balance in the Non-Qualified Plan

Defendants assert that Manarang, 4Cs Executive Director, "received a census from LSW" and that census "shows that Mr. Villasenor's account balance in the Nonqualified Plan is zero." Opp'n at 5 (citing Manarang Decl. ¶ 13, Exh. D to Manarang Decl., ECF 71-4). According to Defendants, "[b]ecause Villasenor cannot show that he is entitled to any benefits from the Nonqualified Plan, his motion should be denied." Opp'n at 5. Plaintiff objects to the "census" document (Exh. D to Manarang Decl.) on the ground that "it is unauthenticated, lacks foundation,

13

and is inadmissible hearsay." Reply at 9. Plaintiff further notes that "[t]he account number listed on the sheet does not even match the account for the Non-Qualified Plan." *Id.* According to Plaintiff, the Non-Qualified Plan is funded by an annuity policy issued by LSW and "[b]ecause the annuity policy belongs to the 4Cs, no individual account balances are maintained for the Non-Qualified Plan." *Id.*

The Court need not address Plaintiff's evidentiary objections because Plaintiff's Motion does not seek summary adjudication of the amount of benefits Plaintiff is entitled to. Plaintiff has only moved this Court for an order establishing that is he entitled to benefits – not to determine how much he is entitled to. Accordingly, Plaintiff's account balance under the Non-Qualified Plan is simply irrelevant to this Motion.

### C. Defendants' Request for Additional Briefing

At the Hearing, Defendants' counsel argued that Defendants' unclean hands defense is based on the allegedly forged letter Plaintiff submitted purporting that Mr. Menor authorized Plaintiff's claim for benefits on August 4, 2020. Defendants did not brief this issue in their opposition to Plaintiff's Motion and raised it for the first time at the Hearing. Defendants' counsel requested leave to file a supplemental brief on this issue. As discussed at the Hearing, the Court denies Defendants' request because Defendants have failed to show good cause warranting such a relief.

Defendants had *months* to prepare their opposition brief. Plaintiff filed this Motion on January 30, 2020. ECF 58. On February 12, 2020, the Court granted the parties' stipulation to extend the deadline for Defendant's opposition brief to April 2, 2020. ECF 62. When the April 2, 2020 deadline passed and Defendants failed to oppose Plaintiff's Motion, Plaintiff filed a reply requesting the Court to grant his unopposed motion without oral argument. ECF 63. Nearly two weeks later, on April 22, 2020, Defendants filed an *ex parte* application requesting an extension to file their opposition brief. ECF 64. In the interest of deciding Plaintiff's motion on its merits, the Court granted Defendants' application and they filed a 6-page opposition on April 24, 2020. In other words, the Court allowed Defendants to file an opposition to the Motion weeks after the already-extended deadline had passed. The Court finds no justification to give Defendants yet another opportunity to make an argument they could have very well raised in their opposition brief

– which would have given Plaintiff a fair opportunity to respond in his reply brief. Accordingly, Defendants' request for additional briefing is DENIED.

## IV. ORDER

For the foregoing reasons, Plaintiff's Motion for Judgment on His Claims for ERISA Benefits is GRANTED. Specifically:

(1) The Court GRANTS summary judgment as to Mr. Villasenor's first cause of action for benefits under the Retirement Plans pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B);

(2) Mr. Villasenor is entitled to benefits under both Retirement Plans;

(3) Defendants are required to pay Mr. Villasenor's claim under both Retirement Plans; and

(4) Mr. Villasenor is entitled to all past benefits due and owing, plus interest and reimbursements of any penalties assessed as a result of Mr. Villasenor's inability to obtain distributions from the Retirement Plans.

To be clear, the Court has not been asked to, and therefore does not, make any determination as to the amount due to Mr. Villasenor. This Order terminates the Motion at ECF 58.

**IT IS SO ORDERED.**

Dated: July 6, 2020

_____
BETH LABSON FREEMAN
United States District Judge