UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALFREDO VILLASENOR,<br><br>        Plaintiff,<br><br>   v.<br><br>COMMUNITY CHILD CARE COUNCIL OF SANTA CLARA COUNTY, INC., et al.,<br><br>        Defendants. | Case No. 18-cv-06628-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND DETERMINATION OF PAST DUE AND FUTURE BENEFITS, INTEREST, AND PENALTIES** |

Before the Court is Plaintiff Alfredo Villasenor's Motion for Attorneys' Fees and Determination of Past Due Benefits, Future Benefits, Interest, and Penalties. Mot., ECF 78.[1] Based on the reasoning stated on the record at the January 7, 2020 motion hearing and explained below, the Court GRANTS IN PART and DENIES IN PART the motion.

**I.    BACKGROUND**

Plaintiff Alfredo Villasenor filed this action to recover benefits under two retirement plans sponsored by his former employer, Defendant Community Child Care Council of Santa Clara County, Inc. ("4Cs"). ECF 1. On July 6, 2020, the Court granted summary judgment in favor of Villasenor for Villasenor's first cause of action for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). MSJ Order, ECF 77 at 15. This Court determined that (1) Villasenor was

---

[1] This motion functions as a second motion for summary judgment in violation of the Court's standing order; the Court, nonetheless, opts to rule on the motion as it is fully briefed and there are no material disputes of fact.

entitled to benefits under the 4Cs Employee Profit Sharing Plan ("Qualified Plan") and the 4Cs Non-Qualified Pension Plan ("Non-Qualified Plan"), (2) Defendants were required to pay Villasenor's claim under both retirement plans, and (3) Villasenor was entitled to all past benefits due and owing, plus interest and reimbursements of any penalties assessed as a result of Villasenor's inability to obtain distributions from the retirement plans. *Id*. The Court did not, however, determine the amount due to Villasenor, as that question was beyond the scope of the motion. *Id*.; *see also* ECF 58. The Court later granted the parties' stipulation dismissing Villasenor's remaining causes of action. ECF 83.

Villasenor now seeks a determination that he is owed a monthly benefit of $11,307.42 under his Non-Qualified Plan. He also seeks an order and judgment in the following amounts: (1) $452,296.80 in past due benefits owed under the Non-Qualified Plan, plus $11,307.42. for every month of benefits that remain unpaid; (2) $50,519.99 in prejudgment interest, plus interest at 5% for every month that benefits remain unpaid; (3) $55,346 in IRS penalties Villasenor owes because he was unable to take his minimum required distributions in 2017, 2018, and 2019; and (4) $128,868 in legal fees and costs. *See* Mot.

## II. DISCUSSION

### A. Benefits Due under the Non-Qualified Plan

The Court first considers Villasenor's request for a Determination of Past Due Benefits. Mot. at 2-3. Villasenor seeks a determination that he is owed a monthly benefit of $11,307.42 under his Non-Qualified Plan. *Id*.

As a threshold issue, 4Cs raises that "Villasenor did not present a proper claim for benefits from the Non-Qualified Plan. Rather, until he filed this Motion last month, he had not shown 4Cs that he had obtained a 20-year monthly pension with his Qualified Plan benefits – a prerequisite for obtaining benefits under the Non-Qualified Plan." Opp. at 3, ECF 90. The Court rejects this argument. It has already determined just the opposite in its MSJ Order. MSJ Order at 6-9, 15. As

2

the Court concluded then, "Plaintiff has provided evidence that he applied for his [Non-Qualified Plan] retirement benefits in August, October, and November 2017 . . . And Defendants have failed to present any evidence to the contrary to create a factual dispute." *Id*. at 8-9.

The Court thus turns to the merits of Villasenor's request. The relevant section of the 4C's Non-Qualified Pension Plan Document states:

> 3.1 Plan Benefits. The Company shall pay to each Participant a supplemental retirement benefit each month for twenty (20) years commencing with the month following the month in which the Participant first made a claim under the Qualified Plan (the "Supplemental Benefit"). The amount of each monthly installment plan shall be determined by:
>
> First, determine the amount of the monthly pension benefit the Participant would be entitled to if the Participant had been covered by the California State Teachers Retirement System (CalSTRS) during the period of their employment with the Company, taking into account their actual salary, age, actual retirement date and assuming they elected a twenty (20) year payout from CalSTRS. This is the "Measuring Benefit." A determination made by use of CalSTRS "retirement Calculator" at http://www.calstrs.com/Calculators/index.aspx, shall be binding on the Participant and the Plan.
>
> Second, subtract from the Measuring Benefit the actual pension benefit the Participant shall receive from the Qualified Plan. If the Participant elects a payout in excess of twenty (20) years from the Qualified Plan then the Measuring Benefit shall be subtracted from a sum equal to the amount the participant would receive if the Participant had elected a twenty (20) year benefit payout. The result of this calculation is the monthly payment of the Supplemental Benefit.

Plan Document, ECF 78-2.

Under the Plan Document, the monthly payment from the Non-Qualified Pension Plan is determined by subtracting the monthly benefit amount from the Qualified Plan (placed in an annuity) from the Measuring Benefit, which is the monthly benefit that the participant would have been entitled to under CalSTRs. In mathematical terms: Measuring Benefit – Qualified Plan =

3

Non-Qualified Monthly Plan Benefits.

The Court starts by calculating the Measuring Benefit. The CalSTRs monthly pension benefit is based on the following formula: Service Credit x Age Factor x Final Compensation = Measuring Benefit. Retirement Benefits, CalSTRs, https://www.calstrs.com/retirement-benefits, accessed December 16, 2020; ECF 97, Exh. A (screenshot of retirement calculator).

The parties do not dispute this formula. Nor do they dispute the age factor—.024—or Villasenor's final monthly compensation—$15,125.00—under this formula; instead, they argue about the amount of years of service credit to which Villasenor is entitled. *Compare* Mot. at 2-3 *with* Opp. at 4. Villasenor contends he is entitled to 45 years as he was employed by 4Cs between October 1, 1972 and August 4, 2017. Mot. at 3 (citing Villasenor Decl. ¶ 2). To support this interpretation, Villasenor argues that under the Plan Document, "benefits are calculated based on 'the period of employment with the Company' and not on a 'period of employment with the Company since the Plan was established' as Defendants argue." Reply at 3, ECF 92. 4Cs, for its part, argues Villasenor is only entitled to 15.75 years of service credit, which represents the amount of time between the establishment of the Non-Qualified Plan on November 19, 2001 and Villasenor's retirement date. *Id*. 4Cs supports this argument with the declaration of Ben Menor that "[s]ince the inception of the Non-Qualified Plan, 4Cs has determined the employee's 'years of service' under the Plan by calculating the employee's years of service following the Plan's creation date." Opp. at 3 (citing Menor ¶ Decl. 12).

The Court agrees with Villasenor. The Plan Document defines years as "all periods of employment regardless of whether such periods are not consecutive," which supports Villasenor's conclusion that his retirement benefit should be calculated based on Villasenor's total years of service, not Villasenor's years of service during which the Non-Qualified Plan existed. The only argument 4Cs offers to the contrary is the declaration of Menor, which is made without any foundation. Menor's declaration does not set forth any facts to establish his knowledge about the

4

administration of the Non-Qualified Plan. Indeed, prior declarations by Menor suggest just the opposite. *See, e.g.,* ECF 70 ¶ 5 ("I am not and was not the Plan Administrator for the 4Cs Non-Qualified Plan."); *see Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995) (declarations made without personal knowledge are "entitled to no weight"). The Court concludes that, under the Plan Document, Villasenor's Service Credit factor is 45. Applying the CalSTRs formula of Service Credit x Age Factor x Final Compensation = Retirement Benefit, 45 x .024 x $15,125.00 = $16,335. *See* Mot. at 3. Villasenor's monthly Measuring Benefit is $16,335.

Villasenor contends that on top of this Measuring Benefit, he is owed $400 each month as a longevity bonus under CalSTRS. Mot. at 3. In support, he offers a copy of the CalSTRS Retirement Calculator webpage. The image indicates that, upon inserting Villasenor's relevant information and clicking the "calculate" button, a pop-up appears asking "Did the member earn 30 years of credited service prior to 1/1/2011? YES/NO." ECF 97, Exh. C. Upon clicking "yes," the CalSTRS calculator indicates Villasenor is owed $16,755, which includes a $400 longevity bonus. *See* ECF 97, Exh. D; ECF 98 (errata to ECF 97). 4Cs objects that there is "no mention of the CalSTRS longevity bonus in the Non-Qualified Plan" Opp. at 4. Maybe so. But the Non-Qualified Plan Document explicitly incorporates the CalSTRS Retirement Calculator, which includes a longevity bonus. *See* Plan Document § 3.1 ("A determination made by use of CalSTRS "retirement Calculator" at http://www.calstrs.com/Calculators/index.aspx, *shall be binding on the Participant and the Plan*." (emphasis added)). As such, the Court concludes Villasenor's Measuring Benefit under the Non-Qualified Plan is $16,735.

According to the Plan Document, the next step is to "subtract from the Measuring Benefit the actual pension benefit the Participant shall receive from the Qualified Plan." Plan Document § 3.1. In mathematical terms: Measuring Benefit – Qualified Plan = Non-Qualified Monthly Plan Benefits. The parties do not dispute that Villasenor is scheduled to receive a monthly Qualified Plan benefit amount of $5,427.58. Mot. at 4; Opp. at 4. When the Qualified Plan benefit of

5

$5,427.58 is subtracted from the Measuring Benefit of $16,735, Villasenor's Non-Qualified Plan monthly benefit amounts to is $11,307.42. The Court determines that Villasenor is entitled to a Non-Qualified Plan monthly benefit amount of $11,307.42.

### B. Past Due Benefits

Villasenor seeks $407,067.12 in past due benefits, which he calculated by multiplying a monthly benefit of $11,307.42 by 36 months. Mot. at 4. Villasenor contends he is due 36 months of past due benefits as he should have started receiving benefits on November 1, 2017. *Id*. 4Cs responds that "Villasenor is not owed past due benefits because now that he has submitted a claim for benefits and submitted proof of his 20-year annuity with benefits from the Qualified Plan, he will obtain a Non-Qualified benefit each month for 20 years." Opp. at 5. It alternatively argues that Villasenor's past due benefit should be calculated by multiplying $289.67 by 36 months, resulting in a total amount of $10,428.12. It also requests that Villasenor's subsequent monthly benefit payments be limited to seventeen years, or 204 months. Opp. at 5.

The Court, again, rejects 4Cs first argument as contrary to this Court's MSJ Order. In that Order, the Court made clear that Villasenor applied for benefits in November 2017. MSJ Order at 8. As the Court determined in the prior section, Villasenor is owed a monthly Non-Qualified Plan benefit of $11,307.42. And, having rejected 4Cs first argument, there is no dispute that Villasenor has been owed benefits since November 1, 2017. Thirty-ninth months have passed since November 1, 2017. Accordingly, Villasenor is owed past-due benefits of $11,307.42 for 39 months, which amounts to $440,989.38. The Court AWARDS Villasenor $440,989.38 in past due benefits. The Court further determines Villasenor is limited to 201 subsequent months of benefits payments from the Non-Qualified Plan.

### C. Prejudgment Interest

Villasenor argues he is entitled to 5% prejudgment interest on his withheld benefit payments. Mot. at 4-5. Villasenor calculates he is owed $27,930.50 in interest, plus $565.60 a

month for every future month that benefits remain unpaid. *Id*. at 4. This request is based on a 5% interest rate. *Id*. 4Cs argues that prejudgment interest is an element of compensation, and that Villasenor has failed to provide evidence of loss Opp. at 5.

"A district court may award prejudgment interest on an award of ERISA benefits at its discretion." *Blankenship v. Liberty Life Assurance Co. of Boston*, 486 F.3d 620, 627 (9th Cir.2007). "The exercise of that discretion is to be guided by fairness and balancing the equities." *Perez v. Cozen & O'Connor Group Long Term Disability Coverage*, No. 07cv0837 DMS(AJB), 2008 WL 6693714, at *1 (S.D.Cal. Aug. 19, 2008) (citing *Shaw v. Int'l Ass'n of Machinists and Aerospace Workers Pension Plan*, 750 F.2d 1458, 1465 (9th Cir.1985)). "[M]oney has a time value, and prejudgment interest is therefore necessary in the ordinary case to compensate a plaintiff fully for a loss suffered at time t and not compensated until t + 1." *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 922 (9th Cir.1995) (internal citations omitted). An award of prejudgment interest serves as an element of compensation rather than a penalty. *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 988 (9th Cir.2001).

"Whether to award prejudgment interest to an ERISA plaintiff is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." *Smyrni v. U.S. Investigations Servs. LLP*, No. C 08-4360-PJH, 2010 WL 807445, at *2 (N.D. Cal. Mar. 5, 2010) (citing *Landwehr v. DuPree*, 72 F.3d 726, 739 (9th Cir.1995) (internal citations omitted). Among the factors to be considered in determining whether prejudgment interest should be awarded is the presence of bad faith or ill will and whether the award of prejudgment interest would put a financial strain on the defendant. *Smyrni*, 2010 WL 807445, at *2 (citing *Landwehr*, 72 F.3d at 739 and *Shaw v. Int'l Ass'n of Machinists and Aerospace Workers Pension Plan*, 750 F.2d 1458, 1465 (9th Cir.1985)).

On this record, and in the exercise of the Court's discretion, the Court GRANTS Plaintiff's request for prejudgment interest. The Court finds that there was ample bad faith on the part of 4Cs

to support this award. The Court's order granting summary judgment highlights the bad faith present here. In rejecting 4Cs' argument that Villasenor's motion was moot because 4Cs' authorized distribution of Villasenor's Qualified Plan benefits, the Court explained:

> Defendants delayed the authorization of Plaintiff's claim for benefits under the Qualified Plan for over two years – without providing him with any written explanation. More than 15 months after Plaintiff sued for benefits and shortly before filing their tardy opposition to Plaintiff's motion for summary judgment, Defendants finally authorized the processing of Plaintiff's benefits under the Qualified Plan. Defendants cannot ignore an ERISA plan participant's claim for years and escape the consequences of their actions (or inactions) by simply "mooting" Plaintiff's claim at this stage of litigation.

MSJ Order at 13. And, although Villasenor attempted to resolve this issue with 4Cs multiple times, his outreach was met with silence. *Id*. at 2-3; s*ee Stone v. Bayer Corp. Long Term Disability Plan*, No. 08-CV-356-BR, 2010 WL 2595675, at *4 (D. Or. June 21, 2010) (awarding prejudgment interest in an ERISA action where the Defendant denied Plaintiff benefits for five years, requiring Plaintiff to file two federal court actions). 4Cs argues that it was simply following legal counsel's advice to not issue Villasenor's plan benefits. Opp. at 7. This narrative paints an incomplete picture of the facts here. The Court acknowledges that the payment of prejudgment interest may impose a financial strain on 4Cs, but this factor cannot overcome the considerable bad faith that permeated this action.

      The Court, however, declines to accept Villasenor's suggested interest rate. The Ninth Circuit has held that "the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate." *Grosz-Salomon v. Paul Revere Life Ins. Co*., 237 F.3d 1154, 1164 (9th Cir.2001). The interest rate for post-judgment interest under § 1961 is the rate applicable to one-year United States Treasury Constant Maturities (T–Bills). *See, e.g., W. Pac. Fisheries, Inc. v. SS President Grant*, 730 F.2d

1280, 1289 (9th Cir. 1984).

In his opening brief, Villasenor failed to produce evidence to establish that he suffered the loss of an ability to invest money in funds at a rate of return higher than that earned on T–Bills or that he had to borrow money at a higher rate to compensate for lost benefits. *See* Mot. at 4-5. Instead, Villasenor requested that "the court, in its discretion, award prejudgment interest at a higher rate than the formula prescribed for post-judgment interest under 28 U.S.C. § 1961" and cited to numerous district court cases from the early 2010s. Mot. at 4. As part of his reply brief, however, Villasenor offered a supplemental declaration that he has taken out "loans on his life insurance at a rate of 8% in order to pay his daily living expenses" that would otherwise have been paid out of his monthly pension benefits. *See* Reply at 6.

Although the Court is not persuaded by caselaw that deals in financial figures from nearly a decade ago, it finds that the one-year T–Bill rate is insufficient here in light of 4Cs' bad faith and evidence that Villasenor took out loans to pay for his living expenses. The Court AWARDS Villasenor prejudgment interest at the average prime rate. Villasenor provides documentation that the average primate rate between November 2017 and July 2020 was 4.76%. *See* Supp. Curry Decl., ECF 94. The Court DIRECTS Villasenor to recalculate the prejudgment interest at 4.76%, compounded annually, and to submit a declaration showing this calculation with the proposed judgment.

**D.  IRS Penalties Related to the Qualified Plan**

Villasenor alleges he owes the IRS $55,346.38 in penalties for the failure to take the required minimum distributions from his Qualified Plan in 2017, 2018, and 2019. Mot. at 5 (citing Tierney Decl. ¶ 22; Villasenor Decl. ¶ 13, 14 and Exh. F.). 4Cs responds that Villasenor has failed to submit evidence that he in fact incurred penalties associated with the Qualified Plan. Opp. at 5. The parties do not dispute that the IRS has not yet assigned Villasenor any penalties because he has not been able to take distributions from his Qualified Plan. The Court will not award tax

9

penalties that have not yet been assessed. Should Villasenor in fact incur any penalties from the IRS, he may move for an amended judgment.

### E. Attorneys' Fees

Villasenor requests an award of $128,868 in attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) because he achieved success on his claim for benefits under both retirement plans. He argues that the factors set forth by the Ninth Circuit in *Hummell v. S. E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980), support a fee award. Mot. at 6-12. 4Cs argues that the first and second *Hummell* factors warrants denial of the request. Opp. at 6-7.

Section 502(g)(1) of ERISA gives the Court discretion to award attorneys' fees. 29 U.S.C. § 1132(g)(1). The Supreme Court has held that a fee claimant may be entitled to attorneys' fees if the claimant shows "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). In addition, the Ninth Circuit has held that a prevailing plan participant such as Plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Smith v. CMTA-IAM Pension Tr.*, 746 F.2d 587, 589 (9th Cir. 1984) (internal quotations and citation omitted). As the Ninth Circuit has explained, ERISA "is remedial legislation which should be liberally construed in favor of protecting participants in employee benefit plans" and, specifically, "to afford them effective access to federal courts." *Id*.

Once a court determines that an ERISA fee claimant has achieved some degree of success on the merits, the court "must consider" the factors set forth in *Hummell*, 634 F.2d 446, to guide its discretion under § 1132(g). *See Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1119, 1121 (9th Cir. 2010). In exercising this discretion, district courts should consider the following factors: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties

requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Hummel*, 634 F.2d at 453.

"No one of the *Hummell* factors . . .is necessarily decisive, and some may not be pertinent in a given case." *Carpenters Southern Californian Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984). The Ninth Circuit generally construes the *Hummell* factors in favor of participants in employee benefit plans. *See McElwaine v. U.S. West, Inc*., 176 F.3d 1167, 1172 (9th Cir. 1999) ("When we apply the *Hummell* factors, we must keep at the forefront ERISA's purposes that 'should be liberally construed in favor of protecting participants in employee benefit plans"); *Oster v. Std. Ins. Co*., 768 F. Supp. 2d 1026, 1032 (N.D. Cal. 2011).

### 1. *Hummel* Factors

The first *Hummell* factor, the "degree of opposing parties' culpability or bad faith," supports a fee award because the Court found that Villasenor was entitled to benefits under both plans. A losing defendant in an ERISA case is generally regarded as culpable for their conduct because a "losing defendant must have violated ERISA, thereby depriving plaintiffs of rights under a [benefit] plan and violating a Congressional mandate." *Salovaara v. Eckert*, 222 F.3d 19, 28 (2d Cir. 2000). "[F]rom a legal perspective, Defendants are 'culpable' in that they were found to owe Plaintiff a legal duty that they were not fulfilling." *King v. Cigna Corp*., 2007 U.S. Dist. LEXIS 94644, *5 (N.D. Cal. 2007); *see also, Caplan v. CAN Financial Corp*., 573 F.Supp.2d 1244, 1248 (N.D. Cal. 2008) (same). 4Cs is "culpable" in that it owed Villasenor a legal duty to pay him benefits under the Qualified and Non-Qualified Plans that it was not fulfilling. *See* MSJ Order. And, as the Court explained above, 4Cs acted in bad faith in withholding this legal duty.

The second *Hummell* factor, ability to pay, is in dispute. Villasenor states without evidence that this factor is satisfied as the "4Cs is insured for the claim and had sufficient assets to pay an award of attorneys' fees." Mot. at 7. 4Cs rebuts this argument, contending that it is not insured for

11

attorneys' fees arising out of claims for retirement benefits. Opp. at 7 (citing Menor Decl., ¶ 13). It also highlights, in its opposition brief and at the motion hearing, that it is currently filing for dissolution "because the State of California has ceased providing funding to 4Cs as of June 30, 2020." *Id*. As such, it argues that it does not have the ability to satisfy an attorney fee award. The evidence is on the side of 4Cs. The Court finds that this factor weighs against awarding attorneys' fees.

The third factor, deterrence, favors an award of fees. Unlike traditional tort claims under state law, ERISA does not provide any type of exemplary or punitive damages remedy to deter bad faith insurance conduct. *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985) (holding compensatory and punitive damages not available remedies for ERISA benefit claims). Attorney fee awards pursuant to 29 U.S.C. § 1132(g) are, therefore, regarded as essential for deterring future violations of ERISA. *See Caplan*, 573 F.Supp.2d at 1248 (an "award of attorneys' fees could serve to deter other plan administrators from denying meritorious disability claims" which "could indirectly benefit other individuals"); *Carpenters Southern Californian Admin. Corp.*, 726 F.2d at 1416 (an attorney's fees award to a prevailing plaintiff provides "added incentive to comply with ERISA"). Here, a fee award will deter providers of pension plan benefits from failing to comply with ERISA's claims regulation procedures.

The fourth factor, whether the relief sought would benefit other participants or resolve a significant legal question regarding ERISA, is neutral at best. Although Villasenor argues that "Defendants argued they were exempt from having to comply with ERISA's claims handling procedures because of challenges to the plan from third parties" and a finding that they are not "will benefit other pension plan participants in other plans," this case focused on the factual particularities of Villasenor's situation. Mot at 7-8. "To the extent that the court's decision may help other plan participants, any such benefit is already captured in the previous factor . . . " *Gurasich v. IBM Ret. Plan*, Case No. 14-cv-02911-DMR, ECF 82 at 7 (N.D. Cal. Jul. 12, 2016).

The fifth *Hummell* factor, the relative merits of the parties' positions, also supports a fee award. A participant is entitled to fees under this factor if she "succeeds on any significant issue in litigation which achieves some of the benefit sought in bringing suit and if no special circumstances make an award unjust." *McClure v. Life Ins. Co. of N. Am.*, 84 F.3d 1129, 1136 (9th Cir. 1996) (internal quotation omitted) (emphasis added). Even when a plaintiff does not prevail on some claims for relief, any success on some significant aspect of the case supports a fee award under this factor. *See Caplan*, 573 F. Supp. 2d at 1248. Here, Villasenor prevailed on his claim for benefits under both Plans. *See* MSJ Order.

In sum, the Court finds that three *Hummell* factors weigh in favor of awarding attorneys' fees while only one factor clearly weighs against awarding attorneys' fees. The Court concludes that Villasenor is entitled to an award of attorneys' fees. The Court now turns to the reasonableness of Villasenor's request for fees.

### 2. Reasonableness of Requested Fees

District courts in the Ninth Circuit typically employ the "lodestar analysis" in calculating fee awards. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citations omitted). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Yamada v. Nobel Biocare Holding AG*, No. 14-55263, 2016 WL 1579705, at *6 (9th Cir. Apr. 20, 2016) (internal citation omitted).

The party seeking fees bears the initial burden of establishing the hours expended litigating the case and must provide detailed time records documenting the tasks completed and the amount of time spent. *Hensley*, 461 U.S. at 434; *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). The requesting party also has the burden to demonstrate that the rates requested are "in line with the prevailing market rate of the relevant community." *Carson v. Billings Police Dep't*,

470 F.3d 889, 891 (9th Cir. 2006) (internal quotation marks and citation omitted). Generally, "the relevant community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979 (citations omitted). Typically, "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Fee awards calculated under the lodestar method generally are presumed to be reasonable. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1208-09 (9th Cir. 2013). At the same time, the court may adjust this figure "if circumstances warrant" in order "to account for other factors which are not subsumed within it." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. The district court may also exclude any hours that are excessive, redundant, or otherwise unnecessary. *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley*, 461 U.S. at 434). In addition, the Ninth Circuit has stated that a district court may "impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

After the party presents its evidence supporting its fee request, the party opposing the fees has a "burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992) (citation omitted). The party opposing fees must specifically identify defects or deficiencies in the hours requested; conclusory and unsubstantiated objections are insufficient to warrant a reduction in fees. *De Amaral v. Goldsmith & Hull*, No. 12-CV-03580-WHO, 2014 WL 1309954, at *3 (N.D. Cal. Apr. 1, 2014) (citing *Cancio v. Fin. Credit Network, Inc.*, 04-cv-03755 TEH, 2005 WL

1629809, at *3 (N.D. Cal. July 6, 2005)). Courts have reduced fee awards where prevailing counsel engaged in inefficient or unreasonably duplicative billing, or where counsel's billing records contain insufficiently descriptive entries, show evidence of block billing, or billing in large time increments. *See e.g.*, *Welch*, 480 F.3d at 948-50. Even if the opposing party has not objected to the time billed, the district court may not uncritically accept a fee request, but is obligated to review the time billed and assess whether it is reasonable. *Sealy*, *Inc*. *v*. *Easy Living*, *Inc*., 743 F.2d 1378, 1385 (9th Cir. 1984).

The Court finds that the requested rates are within the prevailing market rates in the community for ERISA attorneys with similar experience and qualifications. The Court also finds that the hours expended by Villasenor's attorneys in this litigation were reasonable.

### a. Reasonableness of Hourly Rates

The rates charged by Villasenor's counsel are reasonable. The "reasonable hourly rate" is calculated "according to the prevailing market rates in the relevant community . . . ." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id*. at 896, n. 11. Affidavits of the plaintiff's attorney and other attorneys regarding prevailing fees in the community as well as rate determinations in other cases can provide evidence of the prevailing market rate. *Welch*, 480 F.3d at 947 (citing *Phelps Dodge Corp*., 896 F.2d at 407). In the absence of opposing evidence, the proposed rates are presumed reasonable. *Phelps Dodge Corp*., 896 F.2d at 407.

Villasenor seeks the following hourly rates: $650 for Kathryn Curry and Tracy Tierney, both of whom are partners at GCA Law Partners with over 20 years of experience, and $190 for Tina Ernst and Jennifer Johnson, both of whom are senior litigation paralegals at GCA Law

15

Partners with over 20 years of experience. Mot. at. 9-10. Villasenor submits the following information in support of these requested rates: (1) the Curry declaration, ECF 78-2; (2) the Tierney declaration, ECF 78-3; (3) citations to rates awarded to ERISA attorneys; and (4) a Request for Judicial Notice,[2] ECF 79, of declarations filed by Rebecca Grey and Terence Coleman in support of the fee motion in *Echague v. Metro. Life Ins. Co.*, Case No. 3:12-cv-00640-WHO (N.D. Cal. Aug. 20, 2014), as well as Judge Orrick's Order on that motion, *Echague v. Metro. Life Ins. Co.*, 69 F. Supp. 3d 990, 997 (N.D. Cal. 2014), and Judge Ryu's Order on a separate attorneys' fee motion in *Gurasich v. IBM Ret. Plan*.

4Cs does not attempt to rebut the evidence of the reasonableness of the rates sought by Villasenor in this case. Based upon the declarations submitted by Villasenor, as well as the absence of any contrary evidence submitted by 4Cs, the Court finds that the hourly rates requested are reasonable and consistent with the prevailing market rates. *See Gurasich*, ECF 82 at 11 (approving rate of $650 for a partner with over 20 years of experience and $180 for senior paralegals); *Zoom Elec., Inc. v. Int'l Bhd. of Elec. Workers, Local 595*, No. C 11-1699 CW, 2013 WL 2297037, at *4 (N.D. Cal. May 24, 2013) (approving hourly rates between $180 and $225 per hour for law clerks and paralegals).

### b. Reasonableness of Hours Expended

In granting a fee award, the Court must explain how it arrived at the amount. *Moreno*, 534 F.3d at 1111. The explanation does not need to be elaborate; rather, it "must be concise but clear." *Id.* (citing *Hensley*, 461 U.S. at 437). "Where the difference between the lawyer's request and the

---

[2] The Court GRANTS Villasenor's request for judicial notice. Courts may properly take judicial notice of other court filings and matters of public record. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (citing *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998)). The Court also takes notice of the fact that the Grey and Coleman declarations were filed in that matter.

court's award is relatively small, a somewhat cursory explanation will suffice. But where the disparity is larger, a more specific articulation of the court's reasoning is expected." *Id*. The party seeking the award of fees bears the burden of submitting time records detailing the hours spent; courts may reduce the award where the records do not justify the hours spent. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). Courts also have discretion to reduce the amount of hours billed in the event that entries are block-billed, as a court will be unable to determine whether all time in the entry was reasonably expended, and for duplicative or unnecessary work. *Mendez v. Cty. of San Bernadino*, 540 F.3d 1109, 1128-29 (9th Cir. 2008); *see also Day v. AT & T Disability Income Plan*, 608 F. App'x 454, 457 (9th Cir. 2015).

Villasenor's attorneys contend that they have spent the following time on this case: 157.8 hours by Kathryn Curry; 36.6 hours by Tracy Tierney; and 13.2 hours by the two paralegals. Mot. at 11-12. These hours, if granted in their totality, amount to $128,868 in attorneys' fees. *Id*. Villasenor submits the declarations of his two attorneys along with computerized billing system entries to support this request. Curry Decl., ECF 78-2; Tierney Decl., ECF 78-3; ECF 78-2, Exh. 6-7 (billing entries). The computerized billing system entries indicate the date the services were performed, the individual performing the services, the nature of the services, and the time spent performing the services. Villasenor also provided a summary of the amount of time spent by each timekeeper on each key task (complaint, settlement, motions for summary judgment, etc.). Supp. Curry Decl., ECF 94.

4Cs' sole objection to the reasonableness of these hours is that Villasenor included 27 hours attributable to a third-party's motion to intervene. Opp. at 7. 4Cs contends that it did not initiate that filing or cause Villasenor to incur any fees associated with that filing. *Id*. Villasenor responds that his attorneys spent only 21.8 hours on the motion to intervene, and that this time is recoverable because he was "forced to oppose the Motion to Intervene, which if granted, would have substantially impacted the cost, expense, and time spent on this case and would have turned

his simple claims for benefits into a class action." Reply at 9-10; *see also* ECF 78-2, Exh. 6-7 at 2-3 (detailing hours spent on the motion to intervene); Supp. Curry Decl. (providing hourly summaries by key task). The Court agrees with Villasenor and finds it both reasonable— and, indeed, even necessary— that his attorneys expended time on this motion. The Court also finds that 21.8 hours was a reasonable amount of time to expend based on the nature of the motion.

The Court's analysis is not yet complete. *See Sealy*, 743 F.2d at 1385 (holding that the district court may not uncritically accept a fee request). In light of the Court's responsibility to determine fees for the hours reasonably expended, the Court has analyzed the individualized billing entries. The Court finds that the time spent by counsel to litigate this case to its successful completion was reasonable. District courts within California have acknowledged that "[p]laintiffs in ERISA matters generally must spend a great amount of time preparing for conferences and other proceedings because ERISA cases tend to be factually intensive." *Oster*, 768 F. Supp. 2d at 1036 (quoting *Mogck v. Unum Life Ins. Co. of Am.*,289 F.Supp.2d 1181, 1192 (S.D.Cal.2003)). This case was no different. The parties engaged in significant litigation activities, including motions to intervene, to dismiss the complaint, to compel arbitration, to stay the case, and for summary judgment, along with a settlement conference. *See* ECF 13, 31, 55, 58.

The Court GRANTS the motion for attorneys' fees in full and AWARDS Villasenor $128,868 in attorneys' fees.

### III.     ORDER

**IT IS HEREBY ORDERED:**

1. Alfredo Villasenor is owed a Non-Qualified Plan monthly benefit amount of $11,307.42.
2. Alfredo Villasenor is AWARDED $440,989.38 in past due benefits. Villasenor is limited to 201 subsequent monthly benefits payments from the Non-Qualified Plan.
3. Alfredo Villasenor is AWARDED prejudgment interest at 4.76%, compounded annually.

18

4. Alfredo Villasenor's request for payment of IRS penalties is DENIED WITHOUT PREJUDICE. Villasenor may move for an amended judgment should any penalties be assessed against him in the future.

5. Alfredo Villasenor's motion for attorneys' fees is GRANTED. Villasenor is AWARDED $128,868 in attorneys' fees.

6. The Court DIRECTS the parties to submit a proposed judgment consistent with this Order, including a calculation of the amount of prejudgment interest due, **by February 1, 2021**. Villasenor SHALL also submit a supporting declaration showing this calculation.

Dated: January 25, 2021

_____
BETH LABSON FREEMAN
United States District Judge